John R. McLAREN, M.D., Plaintiff,

v.

EMORY UNIVERSITY, Defendant.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

EMORY UNIVERSITY, Defendant.

Civ. A. Nos. 1:88–CV–745–JTC, 1:88–CV–871–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 5, 1988.

**564**

David Charles Cisneros and Robert B. Remar, Remar & Graettinger, Atlanta, Ga., for plaintiff John R. McLaren.

Philip B. Sklover, Washington, D.C., James Douglas Macy and Susan Pease Langford, Atlanta, Ga., for plaintiff E.E. O.C.

Burton Freeman Dodd, Fisher & Phillips, Atlanta, Ga., for defendant Emory University.

## ORDER

CAMP, District Judge.

Presently before this Court are plaintiff's Motion for Consolidation or Intervention, defendant's Motion to Strike or in the Alternative to Dismiss Claims for Compensatory Damages in Lieu of Liquidated Damages and Motion to Strike Corresponding Allegations of Non–Pecuniary Losses, defendant's Motion to Strike Demand for Trial by Jury, and defendant's Motion for Enlargement of Discovery Period. Plaintiff's Motion for Consolidation or Intervention has been rendered moot by Judge G. Ernest Tidwell's Order of July 15, 1988, granting plaintiff's Motion for Consolidation. For the reasons detailed below, defendant's Motion to Strike Demand for Trial by Jury, defendant's Motion to Strike or in the Alternative to Dismiss Claims for Compensatory Damages in Lieu of Liquidated Damages and Motion to Strike Corresponding Allegations of Non–Pecuniary Losses, and Defendant's Motion for Enlargement of Discovery Period are GRANTED.

## FACTS

This suit was brought by plaintiff, Dr. John R. McLaren pursuant to the Age Discrimination In Employment Act (hereinafter "ADEA" or "the Act") 29 U.S.C. § 621, *et seq.* Dr. McLaren, an employee of the Emory University School of Medicine since 1958, was appointed Director of the Division of Radiation Therapy on February 4, 1983. Plaintiff served in that capacity until October 7, 1985, when at age 63, plaintiff was replaced by a 39 year old physician. Plaintiff contends that his removal from the position of Director of the Division of Radiation Therapy was based solely on his age and was done wilfully.

Plaintiff admits that he suffered no quantifiable out-of-pocket loss but alleges damages to reputation, loss of professional standing, emotional distress, and pain and suffering. Complaint ¶ 15. Plaintiff seeks reinstatement and an award of money damages "in lieu of liquidated damages." Complaint ¶ 18. Plaintiff asserts a rather novel argument in support of his prayer for money damages "in lieu of liquidated damages." Plaintiff argues that his employer's conduct was willful under the ADEA and that, consequently, an award of damages in lieu of liquidated damages is necessary to compensate him for such non-pecuniary losses and to effectuate the purposes of the Act. A review of the history behind the ADEA and of the recent case law interpreting the Act is necessary both to understand plaintiff's argument and to understand why that argument must fail.

## THE ADEA

The ADEA was passed by Congress in 1967 to eliminate arbitrary discrimination in employment against older Americans. The Act's proscription against discrimination in the workplace is enforced by the remedies provided in Section 7(b) of the Act at 29 U.S.C. § 626. In drafting 29 U.S.C. § 626, Congress gave serious consideration to its two principal components: the scope of available remedies and the provision for administrative mediation.

Turning first to the latter, the legislative history behind the ADEA is replete with

references to the importance of the process of administrative mediation. Senator Javits stated that the method of enforcement of the ADEA "is direct action in the District Court by the Secretary of Labor or the employee for appropriate relief. Such action may only be commenced after informal methods of conciliation have been exhausted." 113 CONG.REC. 7076 (daily ed. March 16, 1967) (Statement of Sen. Javits). Similarly, on November 6, 1967, the Congressional Record read: "It is intended that the responsibility for enforcement vested in the Secretary by section 7 be initially directed through informal methods of conciliation and that the formal methods be applied only if voluntary compliance cannot be achieved." 113 CONG.REC. 31250. Consequently, the Act provides that an individual cannot initiate a civil action until sixty days after he has filed a charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging discriminatory conduct. The EEOC is then required to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d).[1]

Recognizing, however, that informal methods of conciliation sometimes fail, Congress empowered courts with both legal and equitable remedies to enforce the ADEA. Congress expressly incorporated into the ADEA the remedial structure of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201–219 (1982)[2], but the incorporation was not wholesale. Congress carefully picked and chose among the remedies provided in the FLSA. For example, Congress included in the ADEA the FLSA provisions authorizing liquidated damages. However, while liquidated damages are awarded as a matter of right for violations of the FLSA,[3] they are available under the ADEA only when such violations are willful.[4] Similarly, Congress expressly declined to incorporate the criminal penalties authorized by the FLSA. Congress' selective incorporation of the FLSA is significant for one reason: it demonstrates the detailed consideration that went into the crafting of the ADEA, allowing courts to use the FLSA as a guidepost and also to infer that "statutory silence circumscribes the relief that can be obtained." *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834, 836 (3rd Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Put another way, Congress gave as much consideration to the remedies it chose to exclude from the ADEA as to those it included.

---

1. § 626(c) and (d) deal exclusively with the filing of the EEOC charge and the procedural scheme of the conciliation process:

(c) Civil actions; persons aggrieved; jurisdiction; judicial relief; termination of individual action upon commencement of action by Commission; jury trial

(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

(2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

(d) Filing of charge with Commission; timeliness; conciliation, conference and persuasion

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference and persuasion.

2. "The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided" in the FLSA. 29 U.S.C. § 626(b).

3. 29 U.S.C. § 216(b).

4. 29 U.S.C. § 626(b).

The Act states generally that courts "shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter...." 29 U.S.C. § 626(b). It then adds more precisely that such relief contemplates: (1) "judgments compelling employment, reinstatement or promotion;" (2) "enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation;" and (3) "liquidated damages," in an amount equal to plaintiff's lost wages, "payable only in cases of willful violations." *Id.*

### "DAMAGES IN LIEU OF LIQUIDATED DAMAGES"

Plaintiff Dr. McLaren seeks reinstatement to his former position of Director of the Division of Radiation Therapy, a remedy which is expressly authorized by the ADEA. Plaintiff acknowledges that he suffered no lost wages and is therefore not entitled to recover back pay. Liquidated damages are determined by doubling the amount of plaintiff's pecuniary loss. Without any lost wages or fringe benefits, plaintiff admits that there is no amount upon which an award of liquidated damages could be calculated. He argues instead for damages "in lieu of liquidated damages." Plaintiff's argument is premised on Congress' express inclusion, in the ADEA, of liquidated damages and its exclusion of punitive damages.

Plaintiff correctly asserts that the legislative history behind the ADEA reveals a congressional intent that liquidated damages be in the nature of punitive damages. *See Trans World Airlines v. Thurston, et al.*, 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985); 113 CONG.REC. 7076 (daily ed. March 16, 1967) (Statement of Sen. Javits) ("[T]he criminal penalty in cases of willful violation has been eliminated and a double damage liability substitut-

ed. This will furnish an effective deterrent to willful violations....") Plaintiff then attempts to take the argument one step further: if liquidated damages are not available as a deterrent, the only way to fulfill the purposes of the ADEA would be to award damages in lieu of liquidated damages, to victims of willful age discrimination.

█  There are several flaws in plaintiff's argument. First, plaintiff seeks compensation for non-pecuniary losses which include damage to his good name and reputation, loss of professional standing, emotional distress, and pain and suffering. Such damages are not recoverable under the ADEA. The Third Circuit has held that "Congress saw fit to restrict the penalty provisions of the Act to doubling the amount of lost earnings. To allow psychic distress awards in addition would in a very real sense thwart the limitation Congress thought advisable to impose." *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d at 840. Similarly, the Fifth Circuit in *Dean v. American Security Insurance Company*, 559 F.2d 1036, 1040 (5th Cir. 1977) *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), held that neither punitive nor general damages were recoverable in private actions under the ADEA.[5] Other courts have gone even further. In *Lyons v. Allendale Mutual Insurance Company*, 484 F.Supp. 1343 (N.D. Ga.1980), this Court stated that "compensatory damages for such items as pain, suffering, humiliation, mental or emotional distress are not recoverable in ADEA actions." *Id.* at 1344 (quoting *Sant v. Mack Trucks, Inc.*, 424 F.Supp. 621, 622 (N.D. Cal.1976)). A district court in Alabama also noted that "[d]amages for mental anguish, emotional distress and *injury to reputation* are not recoverable under the ADEA." *Higdon v. Concast Cable Communications, Inc.*, No. 2379, —— F.Supp.

---

**5.** Most federal circuit courts, including the Eleventh Circuit, have held that pain and suffering damages are not recoverable under the ADEA. *See e.g., Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1446 (11th Cir.1985), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1978); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872

(1st Cir.1982); *Pfeiffer v. Essex Wire Corp.*, 682 F.Supp. 684, 685–88 (7th Cir.1982), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Fiedler v. Indian Truck Line, Inc.*, 670 F.2d 806, 809–10 (8th Cir.1982); *Naton v. Bank of California*, 649 F.2d 691, 699 (9th Cir.1981).

—— (N.D.Ala.1987) (LEXIS, Genfed Library, Courts file) (emphasis added).

The second defect in plaintiff's argument lies in the legislative intent to encourage informal conciliation. Computation of compensatory damages in excess of back pay and liquidated damages, could not be readily achieved in any administrative conciliation process. *Rogers v. Exxon,* 550 F.2d at 840–841. "The introduction of a claim for psychic and emotional distress would present serious administrative problems." *Id.* at 841. The Fifth Circuit in *Dean,* agreed:

> Silence of the Act with respect to general damages is entirely consistent with legislative intent to abstain from introducing a volatile ingredient into the tripartite negotiations involving Secretary, employee and employer which might well be calculated to frustrate rather than to "effectuate the purposes" of the Act.

*Dean,* 559 F.2d at 1039.

The Second Circuit, in *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143 (2d Cir.1984), was confronted with a fact pattern similar to the case at bar. The plaintiff in *Johnson* brought an ADEA action against his employer but was unable to document any claims for lost wages. Nevertheless, he attempted to recover both punitive and compensatory damages, including emotional distress damages. Finding that such relief would deter victims of discrimination from fully participating in the informal conciliation contemplated by the ADEA, the court affirmed the dismissal of plaintiff's demands for general compensatory damages. *Id.* at 147. The court stated that "[i]f an individual alleging discrimination knew he could recover compensatory damages if he refused to settle during the administrative process and commenced a civil suit,[6] he would have little incentive to resolve the dispute during the conciliation process." *Id.*

Such rationale would apply with equal force in this case. If the Court allows plaintiff to receive damages for pain and suffering or loss of reputation, it cripples the ADEA's conciliation scheme. ADEA plaintiffs could achieve reinstatement through the administrative mediation process but could be reinstated *and* recover monetary damages in the nature of general damages if they fail to resolve the dispute informally and, instead, prosecute their claim in federal district court. Destroying the incentive to conciliate would be tantamount to eviscerating the very purpose of 29 U.S.C. § 626 of the ADEA. *See supra* at 564–65.

Plaintiff Dr. McLaren's argument fails for yet another reason. He argues that Congress intended liquidated damages to be punitive in nature and therefore, that damages in lieu of liquidated damages need be awarded in cases of willful violations where there are no liquidated damages available. However, that argument ignores both the essence of the ADEA and its remedial structure. First, the principle goal of the ADEA is to make the victim of age discrimination whole and "[r]emedies for violations of the Act are to have a restorative purpose." Marion, *Legal and Equitable Remedies Under the Age Discrimination and Employment Act,* 45 Md.L.Rev. 298 (1986). In fact, the Eleventh Circuit has found that "[t]he purpose of the ADEA, insofar as the individual plaintiff is concerned, is to make the plaintiff 'whole,' to restore the plaintiff to the *economic* position that plaintiff would have occupied but for the illegal discrimination of the employer." *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1561 (11th Cir.1988) (emphasis added).

The Act authorizes reinstatement and back pay to help restore a victim of age discrimination to the economic position he occupied prior to his employer's misconduct. Then, if a jury finds that the employ-

---

**6.** The court noted that Congress implicitly recognized that compensatory damages are more appropriate for determination by a jury when it amended the Act to provide for a jury trial in cases of willful violations of the ADEA. "Accordingly, compensatory damages would be available, if at all, only in an ADEA action brought in federal court, and not in the pre-litigation conciliation process required by 29 U.S.C. § 626(d)." *Johnson,* 731 F.2d at 147 (citing *Rogers v. Exxon,* 550 F.2d 834).

er's conduct was willful, it may double plaintiff's pecuniary loss and award such amount in liquidated damages. Accordingly, the Supreme Court held in *Trans World Airlines v. Thurston, et al.,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), that liquidated damages assessed against an employer for willful violations of the ADEA were punitive in nature. The commencement of any "willfulness" inquiry necessarily depends on a prior determination of quantifiable pecuniary losses. If none exists, then a finding of willfulness is irrelevant, for twice zero remains zero.

] Judge Hall wrote in *Lyons,* 484 F.Supp. at 1344, that the language of both the FLSA and ADEA "make it clear that any monetary recovery under either Act is limited to the amount of unpaid minimum wages, unpaid overtime compensation or in certain instances an additional equal amount in liquidated damages." Despite its apparent detailed consideration of the ADEA, Congress never sought to include language which would authorize punitive damages for willful violations when there could be no award of liquidated damages. Congress and the courts have viewed willfulness as the second prong of a two-tiered inquiry. When plaintiff has suffered no lost wages or fringe benefits, he has remained economically whole and the Court need not reach the question of willfulness.

### THE RIGHT TO A JURY TRIAL

29 U.S.C. § 626(c)(2) provides:

... A person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

Since the Court found that plaintiff is not entitled to damages in lieu of liquidated damages, then there are no "amounts owing" in the case at bar. Plaintiff's argument that he would be entitled to nominal damages and that such would qualify as "amounts owing" under the Act is misplaced. The Court has found no authority under the ADEA sanctioning such a result.

### CONCLUSION

Plaintiff's Motion for Consolidation or Intervention is MOOT. Defendant's Motion to Strike or in the Alternative to Dismiss Claims for Compensatory Damages in Lieu of Liquidated Damages and Motion to Strike Corresponding Allegations of Non-Pecuniary Losses is GRANTED. Defendant's Motion to Strike Demand for Trial by Jury is GRANTED. Defendant's Motion for Enlargement of Discovery Period is also GRANTED. Discovery will now expire on December 23, 1988.